UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

_____

IN RE:
SILAS Z. YOUNG AND                                   Chapter 13
BETTY YOUNG,                                         Case No. 10-13269-WCH
        DEBTORS.
_____

SILAS Z. YOUNG AND
BETTY YOUNG,
        PLAINTIFFS,
                                      Adversary Proceeding
v.                                                   No. 13-1066

SAFE HOME SECURITY, INC.,
        DEFENDANT.
_____

**MEMORANDUM OF DECISION**

**I. INTRODUCTION**

      The matter before the Court is the "Plaintiff's Affidavit as to Fees and Costs" and the "Affidavit of Betty Young" filed by Silas Z. Young and Betty Young (the "Debtors"), and the response thereto filed by Safe Home Security, Inc. (the "Defendant"). I previously granted summary judgment in favor of the Debtors on a three-count Complaint filed against the Defendant and ordered the Debtors to submit affidavits concerning damages. For the reasons set forth below, I will enter an order finding that the Debtors are entitled to $600.00 in damages and $10,082.00 in attorney's fees and costs on Counts I and II of the Complaint.[1]

---

[1] Additionally, for reasons set forth below, I will vacate my prior entry of judgment in favor of the Debtors as to Count III, and instead enter an order dismissing the count for lack of jurisdiction.

1

## II. BACKGROUND

In August 2008, Mrs. Young and the Defendant executed a contract pursuant to which the Defendant provided security services for the Debtors' home in Mattapan, Massachusetts. As of March 10, 2010, Mrs. Young owed the Defendant $366.29. On March 30, 2010, the Debtors filed a voluntary Chapter 7 petition. The Debtors listed the debt owed to the Defendant on "Schedule F – Creditors Holding Unsecured Nonpriority Claims." Upon receiving notice of the Debtors' filing, the Defendant marked Mrs. Young's file as in bankruptcy and ceased all collection activity. On July 7, 2010, the Court entered an order discharging the Debtors. On July 9, 2010, the Court sent the Order of Discharge to all creditors, including the Defendant.

After entry of the Debtors' discharge, Mrs. Young's file was sent to the Defendant's sales team. The Defendant has a policy of asking customers who have gone through bankruptcy to re-sign with the company post-discharge, as the home security monitoring equipment remains installed in their homes. According to the Defendant, after the sales team unsuccessfully attempted to contact Mrs. Young, her file was sent to the Defendant's collection counsel "through human error," rather than remaining inactive.[2]

Between October and December 2011, the Defendant's collection counsel, Attorney Frank J. Maier, sent five collection letters to Mrs. Young. Mrs. Young never responded to the correspondence. On January 9, 2012, Attorney Maier filed suit in the Small Claims Session of the Dorchester Division of the Boston Municipal Court, seeking $1,775.51 in damages for monitoring fees, warranty charges, and finance/late charges, plus interest.

Upon receiving a summons in the small claims action, Mrs. Young contacted the Legal Services Center of Harvard Law School, which had assisted the Debtors with their bankruptcy

---

[2] Trans. Jan. 8, 2014 at 9:17-20.

2

filing. In April 2012, Attorney Max Weinstein of the Legal Services Center filed a motion to allow discovery in the small claims action and sent the Defendant a demand letter under the Massachusetts Consumer Protection Act, Mass. Gen. Laws ch. 93A ("Chapter 93A"). When Attorney Maier learned from Attorney Weinstein's correspondence that Mrs. Young had received a bankruptcy discharge, he voluntarily dismissed the small claims action.

The Debtors filed a motion to reopen the bankruptcy case on February 20, 2013, which I granted the same day. On February 21, 2013, the Debtors commenced the present adversary proceeding against the Defendant. On March 13, 2013, they filed an amended complaint (the "Complaint") which asserted three counts: Count I alleged violations of Chapter 93A; Count II sought an order of contempt based on the Defendant's violation of discharge injunction created by 11 U.S.C. § 524; and Count III alleged intentional infliction of emotional distress. The Debtors filed a motion for summary judgment, to which the Defendant filed an opposition. On January 8, 2014, I conducted a hearing at which both parties appeared. At the conclusion of the hearing, I granted the Debtors' motion for summary judgment as to Count II and directed Debtors' counsel to submit affidavits concerning attorney's fees and costs and any other damages the Debtors sustained. I further granted summary judgment as to Counts I and III, but noted that any damages on those counts would be duplicative.

On February 14, 2014, the Debtors submitted an affidavit from Attorney Weinstein concerning attorney's fees and costs.[3] In his affidavit, Attorney Weinstein stated that he is a Senior Clinical Instructor and Lecturer on Law at Harvard Law School, and his customary billing rate is $350.00 per hour.[4] According to the Legal Services Center's records, Attorney Weinstein

---

[3] "Plaintiff's Affidavit as to Fees and Costs," Docket No. 42.

[4] *Id.* at ¶¶ 1, 4.

3

spent a total of 54.25 hours on the small claims action and the current adversary proceeding.[5] A substantial portion of that time was spent on the motion for summary judgment. Nine of the time entries submitted, totaling 17.5 hours, were labeled "Revised and drafted Motion for Summary Judgment; Memorandum of Law in Support; Statement of Undisputed Material Facts."[6] An additional three entries totaling 6.75 hours reflect time spent on both the summary judgment motion and discovery matters.[7] The time entries further reflect that Attorney Weinstein spent 3.75 hours preparing the Chapter 93A demand letter; 5.25 hours preparing the Complaint; up to 12.75 hours on discovery matters; 3.25 hours reviewing and replying to the Defendant's opposition to summary judgment; 4.25 hours preparing for and attending the summary judgment hearing; and 3.25 hours preparing the affidavits as to damages.[8]

In addition to Attorney Weinstein, three Harvard Law School students performed research regarding the Chapter 93A demand letter and the Complaint. The Legal Services Center seeks payment for 8.75 hours of the students' time, which is less than the time actually expended.[9] Its customary billing rate for Harvard Law School students is $75.00 per hour.[10] Finally, the Legal Services Center paid the $260.00 filing fee to reopen the Debtors' case.[11]

---

[5] Appendix, Docket No. 42 at 5-6.

[6] Time entries for 2/26/2013 through 4/9/2013. Appendix, Docket No. 42 at 5.

[7] Time entries for 4/23/2013, 4/24/2013, and 12/5/2013. Appendix, Docket No. 42 at 5-6.

[8] *Id.*

[9] *Id.* at 5.

[10] "Plaintiff's Affidavit as to Fees and Costs," Docket No. 42 at ¶ 1.

[11] *Id.* at ¶ 3.

The Debtors also submitted an affidavit from Mrs. Young concerning the emotional distress the Defendant's collection efforts caused.[12] Mrs. Young is 62 years old, and her husband is 66.[13] The Debtors each suffer from various medical conditions and receive Social Security disability payments.[14] Mrs. Young stated that at the start of 2010, she and her husband were "desperate," being behind on their mortgage payments, car payments, utility bills, medical bills, and credit card bills.[15] They were receiving calls from debt collectors, which stopped when they filed bankruptcy.[16] When she received the summons in the small claims action ordering her to appear in court and claiming she owed the Defendant almost $2,000, she "thought [she] was going to have a heart attack."[17] She began to worry that the other debt collectors would start calling again.[18] She stated that she and her husband had caught up with their mortgage and other bill payments post-bankruptcy, and thought everything was "going to fall apart again" when she received the summons, as they had no way of paying the Defendant.[19] Even after contacting Legal Services Center, both she and her husband remained anxious until the case was dismissed.[20]

The Defendant filed a response to the Debtors' affidavits on February 26, 2014.

---

[12] "Affidavit of Betty Young," Docket No. 43.

[13] *Id.* at 2.

[14] *Id.*

[15] *Id.* at 3.

[16] *Id.* at 4.

[17] *Id.* at 5-6.

[18] *Id.* at 6.

[19] *Id.* at 8, 10.

[20] *Id.* at 9.

### III. POSITIONS OF THE PARTIES

A. The Debtors

The Debtors did not submit a memorandum of law in support of the affidavits, nor did they file a reply to the Defendant's response. I further note that the Debtors did not attempt to quantify the emotional distress damages that they suffered.

B. The Defendant

The Defendant first contends that the time entries submitted with Attorney Weinstein's affidavit do not properly support the number of hours for which he seeks compensation. The Defendant points out that many of the time entries are duplicative—for example, two entries are simply labeled "Revised complaint" and nine entries are each labeled "Revised and drafted Motion for Summary Judgment; Memorandum of Law in Support; Statement of Undisputed Material Facts." Thus, the Defendant argues that it is impossible to tell what work was actually performed for each time entry.

The Defendant also asserts that Attorney Weinstein chose a needlessly time-consuming approach to handling the case. For example, it argues that the motion to allow discovery in the small claims suit was unnecessary, as Attorney Weinstein had only to inform Defendant's counsel of the bankruptcy discharge to resolve the matter. The Defendant also contends that the present matter could have been resolved more efficiently through a simple motion for contempt, rather than an adversary proceeding. Moreover, the Defendant alleges that the time spent on certain individual tasks—more than 7 hours on a short demand letter, 10 hours on a 31-paragraph complaint, 10 hours drafting discovery requests, and 26.75 hours on a summary judgment

motion[21]—was excessive, especially given the extensive experience Attorney Weinstein and the Legal Services Center have with such cases.

Finally, the Defendant argues that incurring nearly $20,000 in legal fees was disproportionate to the interests at stake, as the Debtors suffered no actual damages. The Defendant points out that the Legal Services Center represents its clients pro bono and that the anxiety the Debtors experienced did not result in any physical symptoms or harm.

## IV. DISCUSSION

### A. Reconsideration of Liability on Count III

I first pause to reconsider the entry of judgment for the Debtors on Count III of the Complaint. Pursuant to Federal Rule of Civil Procedure 60, a court may *sua sponte* correct "a clerical mistake or a mistake arising from oversight or omission whenever one is found in a judgment, order, or other part of the record."[22] Pursuant to 28 U.S.C. § 157(b)(5), "personal injury tort" claims must be tried in a district court.[23] Thus, a bankruptcy court has no jurisdiction to enter judgment on a claim for intentional infliction of emotional distress.[24] Accordingly, I will enter an order vacating the entry of judgment as to Count III and dismissing that count of the Complaint.

---

[21] From the Court's review of the time entries, it appears that the time on the summary judgment motion was 24.25 hours.

[22] Fed. R. Civ. P. 60, made applicable to bankruptcy proceedings by Fed. R. Bankr. P. 9024.

[23] 28 U.S.C. § 157(b)(5) ("The district court shall order that personal injury tort and wrongful death claims shall be tried in the district court in which the bankruptcy case is pending, or in the district court in the district in which the claim arose, as determined by the district court in which the bankruptcy case is pending.").

[24] *See DiMare v. Ameriquest Mortgage Company (In re DiMare)*, 462 B.R. 283, 309 (Bankr. D. Mass. 2011); *Laudani v. Tribeca Lending Corporation (In re Laudani)*, 401 B.R. 9, 42 (Bankr. D. Mass. 2009).

Ultimately, however, the dismissal of Count III does not affect the Debtors' recovery. As I noted at hearing, emotional distress damages are available as a remedy when a creditor has violated the discharge injunction.[25] Accordingly, the Debtors may recover for any emotional distress they suffered under Count I.

B. <u>Counts I and II: Damages</u>

Section 524 of the Bankruptcy Code permanently enjoins creditor actions to collect debts discharged in bankruptcy.[26] While 11 U.S.C. § 524 itself does not provide a remedy for violations of the discharge injunction, a bankruptcy court nonetheless has the power to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]," pursuant to 11 U.S.C. § 105.[27] Thus, a bankruptcy court may use its contempt power to order monetary relief in the form of actual damages and attorney's fees when a creditor has violated the discharge injunction.[28] "Emotional distress is an actual injury for which a debtor may recover damages."[29]

As to the Debtors' actual damages, Mrs. Young's affidavit stated that the Debtors suffered severe anxiety from receiving the summons and waiting for the case to be resolved. The Debtors did not attempt to quantify the emotional distress damages they suffered, and it does not appear that they incurred any medical costs in relation to it. While the Debtors may recover for

---

[25] *See In re Barry*, 330 B.R. 28, 37-38 (Bankr. D. Mass. 2005) (*citing Fleet Mortgage Group v. Kaneb,* 196 F.3d 265, 269 (1st Cir.1999)).

[26] 11 U.S.C. § 524; *Bessette v. Avco Fin. Servs., Inc.*, 230 F.3d 439, 444 (1st Cir. 2000).

[27] 11 U.S.C. § 105(a). *Duby v. United States (In re Duby)*, 451 B.R. 664, 670 (B.A.P. 1st Cir. 2011).

[28] *Bessette*, 230 F.3d at 445.

[29] *In re Rosa*, 313 B.R. 1, 7 (Bankr. D. Mass. 2004) (*citing Fleet Mortgage Group v. Kaneb,* 196 F.3d at 269); *see In re Barry*, 330 B.R. at 37.

8

emotional distress without a showing of physical symptoms,[30] I find that Mrs. Young's statements concerning the Debtors' injury support only nominal damages. I will award the Debtors $100.00 for the stress of receiving the summons and $100.00 for each collection letter they received, for a total of $600.00.

I now turn to whether the attorney's fees claimed by the Debtors are reasonable. "A reasonable fee typically is determined through the lodestar method, which involves multiplying the number of hours productively spent by a reasonable hourly rate to calculate a base figure."[31] The court must consider:

> the nature of the case and the issues presented, the time and labor required, the amount of damages involved, the result obtained, the experience, reputation and ability of the attorney, the usual price charged for similar services by other attorneys in the same area, and the amount of awards in similar cases.[32]

The court may discount or disallow the total hours claimed if the reported hours are "'excessive, redundant, or otherwise unnecessary,'" or if they are insufficiently documented.[33] "The Court need not track down every entry . . . [and] delete those entries insufficiently substantiated, but may use its discretion to determine that a percentage of the fee application is overstated."[34]

In this case, the hours Debtors' counsel expended on the case were insufficiently documented. Nine of the time entries submitted, totaling 17.5 hours, are each labeled "Revised and drafted Motion for Summary Judgment; Memorandum of Law in Support; Statement of

---

[30] *See In re Rosa*, 313 B.R. at 7; *In re Barry*, 330 B.R. at 37.

[31] *Torres-Rivera v. O'Neill-Cancel*, 524 F.3d 331, 336 (1st Cir. 2008).

[32] *Joyce v. Town of Dennis*, 720 F.3d 12, 27 (1st Cir. 2013) (*quoting Haddad v. Wal–Mart Stores, Inc.,* 455 Mass. 1024 (2010)).

[33] *Torres-Rivera*, 524 F.3d at 336 (*quoting Hensley v. Eckerhart,* 461 U.S. 424, 434 (1983)).

[34] *In re Nichols*, 450 B.R. 307, 312 (Bankr. D. Mass. 2011) (internal quotations omitted); *In re Bank of New England Corp.*, 142 B.R. 584, 586 (D. Mass. 1992).

Undisputed Material Facts."[35] An additional three entries totaling 6.75 hours reflect time spent on both the summary judgment motion and discovery matters.[36] This lumping together of discrete tasks precludes the Court from determining which time entries represent hours reasonably spent.[37]

Moreover, I find that the hours spent on various aspects of the case were excessive. Despite the straightforward nature of the factual and legal issues involved, Attorney Weinstein spent up to 24.25 hours preparing the summary judgment motion and supporting materials. Between Attorney Weinstein and the students researching the case, 7.25 hours were logged to produce a demand letter just over 2 pages long.[38] Moreover, Attorney Weinstein spent up to 10 hours[39] drafting discovery requests that consisted of only 6 interrogatories, 13 requests for admissions, and 20 document requests.[40]

Because the inclusion of multiple tasks under single time entries precludes me from determining which particular entries are unreasonable, I will instead reduce the attorney's fees by 50%. Rounding to the nearest dollar, the Debtors' requested fees total $19,644.00, which I will reduce to $9,822.00. The Legal Services Center incurred $260.00 in costs for the filing fee to reopen the Debtors' case, resulting in a total award of $10,082.00 for attorney's fees and costs.

---

[35] Time entries for 2/26/2013 through 4/9/2013. Appendix, Docket No. 42 at 5.

[36] Time entries for 4/23/2013, 4/24/2013, and 12/5/2013. Appendix, Docket No. 42 at 5-6.

[37] *See In re Nichols*, 450 B.R. at 312.

[38] Exhibit A, Docket No. 45.

[39] Time entries for 4/10/2013, 4/23/2013, 4/24/2013, and 12/5/2013. Appendix, Docket No. 42 at 5-6. Again, several of these entries lump together time spent on discovery matters and the summary judgment motion.

[40] Exhibit C, Docket No. 45.

Finally, I note that any damages caused by the Defendant's violation of Chapter 93A are duplicative of the damages awarded for the violation of the discharge injunction. Although Chapter 93A authorizes the court to award double or treble damages in the case of a "willful or knowing" violation of the statute, I do not find that this is an appropriate case for imposing punitive damages.[41] Accordingly, I will not award any additional damages under Count I of the Complaint.

## V. CONCLUSION

In light of the foregoing, I will enter an order awarding the Debtors $600.00 in damages and $10,082.00 in attorney's fees and costs. I will further vacate the entry of judgment with respect to Count III and dismiss that count of the Complaint.

_William C. Hillman_
United States Bankruptcy Judge

Dated: April 8, 2014

Counsel Appearing:

    Max Weinstein, Legal Services Center, Jamaica Plain, MA,
        for the Debtors
    David P. Russman, McElroy, Deutsch, Mulvaney & Carpenter, Boston, MA,
        for Safe Home Security, Inc.

---

[41] Mass. Gen. Laws ch. 93A, § 9; *see Kraft Power Corp. v. Merrill*, 464 Mass. 145, 157 (2013).